# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49161

JONATHON HERNANDEZ,        )
        )
        Petitioner-Appellant,        )
        )        **Boise, December 2022 Term**
v.        )
        )        **Opinion filed: February 13, 2023**
STATE OF IDAHO,        )
        )        **Melanie Gagnepain, Clerk**
        Respondent.        )
_____)

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County. Christopher S. Nye, District Judge.

The district court judgment is <u>affirmed.</u>

Nevin, Benjamin & McKay LLP, Boise, attorney for Appellant. Dennis Benjamin argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Mark Olson argued.

_____

BEVAN, Chief Justice.

After pleading guilty to second-degree murder, Jonathon Hernandez filed a post-conviction petition alleging his trial counsel was ineffective for promising Hernandez he would not receive a sentence of more than ten to fifteen years. Following this alleged promise from his attorney, Hernandez pleaded guilty and signed a written plea agreement and guilty plea advisory form. At the change of plea hearing, the district court placed Hernandez under oath and confirmed that Hernandez and his attorney had reviewed the guilty plea advisory form. The district court later sentenced Hernandez to a unified term of life in prison, with a minimum period of confinement of forty-five years. Following an unsuccessful appeal, Hernandez petitioned for post-conviction relief. At the hearing on the State's motion for summary disposition, the district court found that any error Hernandez's counsel made was cured by a colloquy that took place between the district court and Hernandez at the change-of-plea hearing. There, the district court confirmed answers Hernandez gave on the plea agreement form and the potential sentence Hernandez faced. The district court granted the State's motion for summary

1

disposition and dismissed Hernandez's case with prejudice. Hernandez now appeals to this Court. For the reasons below, we affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hernandez was charged with first degree murder, grand theft by possession of stolen property, and burglary after a woman was found stabbed to death inside her home. *See State v. Hernandez*, 2015 WL 1576732, *1 (Ct. App. 2015) (unpublished). In a separate case, Hernandez was charged with battery upon a law enforcement officer in connection with events while he was in pretrial custody. *See id.* In the murder case, Hernandez was appointed a public defender to represent him.

On August 29, 2013, Hernandez pleaded guilty to second degree murder, in exchange for the State dismissing the grand theft, burglary, and battery on a law enforcement officer charges and its agreement to not file additional charges. During the plea hearing, Hernandez signed both a written plea agreement and a guilty plea advisory form. The documents specified that Hernandez understood that the plea agreement did not require the prosecutor to recommend a particular sentence and that *the district court was not bound* to the sentencing recommendations of the attorneys. On the guilty plea advisory form, Hernandez also specified that no promises had been made to him that influenced his decision to plead guilty.

Hernandez was placed under oath during this hearing and the district court conducted a thorough plea colloquy with him. The district court confirmed that Hernandez and his attorney had discussed the guilty plea advisory form, the possible maximum penalty for second-degree murder (life in prison, *see* I.C. 18-8004), and the court confirmed with Hernandez that he was not pressured or promised anything besides the plea agreement's terms in exchange for his plea. The plea agreement also required Hernandez to pay restitution to the State and the victim's family and specified that sentencing would be open-ended.

Sentencing occurred later, with each side permitted to argue for the sentence they wanted. The district court sentenced Hernandez to a unified term of life in prison, with a minimum period of confinement of forty-five years. *Hernandez*, 2015 WL 1576732, at *2. Hernandez filed a Rule 35 motion to reduce his sentence, which the district court denied. *Id.* Hernandez appealed the district court's denial of the Rule 35 motion to the court of appeals, which affirmed the district court's decision. *Id.* at *3.

On February 22, 2016, Hernandez filed a pro se petition for post-conviction relief claiming ineffective assistance of counsel for his attorney's purported failure to (1) properly challenge the

prosecution for using false evidence in court, and (2) for his attorney's error in allowing him to enter a guilty plea without evidence to support the initial charge. On March 1, 2016, Hernandez was appointed a public defender to represent him in the post-conviction proceeding. The State argued in its answer to the petition for post-conviction that Hernandez not only benefited from the plea deal offered to him, which he accepted, but that there was also no false information provided at sentencing about the guilty plea. On April 20, 2016, Hernandez filed an amended petition for post-conviction relief asserting only a claim that his attorney falsely promised Hernandez he would receive a maximum sentence of "ten to fifteen years."

The State moved for summary disposition in September 2016. Following a hearing in October 2016, the district court orally granted the State's motion because "even assuming that [the public defender] told the defendant that he would not receive any more than a specific sentence, that was all cured by the court's colloquy of the defendant." No written order or judgment was entered at that time. The district court entered its order to dismiss Hernandez's amended petition on February 6, 2018. Hernandez moved pro se under I.R.C.P. 60(b) for "relief from judgment in a civil case." In the district court's response to the motion, filed about six months later, the court determined that the relief sought would be improper under the rule because the order to dismiss filed in February 2018 did not constitute a final judgment under Idaho Rule of Civil Procedure 54(a)(1). The district court filed its judgment on Hernandez's petition for post-conviction relief and dismissed the matter with prejudice on August 18, 2021. Hernandez timely appealed pro se, with a public defender subsequently appointed. That attorney filed an amended notice of appeal.

## II. STANDARD OF REVIEW

A petition for post-conviction relief initiates a civil proceeding in which the petitioner must prove the allegations in the petition by a preponderance of the evidence. *Thumm v. State*, 165 Idaho 405, 412, 447 P.3d 853, 860 (2019). Idaho Code section 19-4906 authorizes summary dismissal of a post-conviction petition. Summary dismissal of an application is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. "Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the relief requested." *State v. Yakovac,* 145 Idaho 437, 444, 180 P.3d 476, 483 (2007).

> On review of a dismissal of a post-conviction relief application without an evidentiary hearing, the Court must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file.

3

*Id.* Inferences should be liberally construed in favor of the petitioner. *Charboneau v. State,* 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). However, "summary dismissal may be appropriate even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Yakovac*, 145 Idaho at 444, 180 P.3d at 484 (quoting *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994)).

### III. ANALYSIS

**A.    Hernandez failed to show that, but for his counsel's promise, he would not have pleaded guilty and instead would have gone to trial.**

Hernandez argues that the district court erred in summarily dismissing his petition for post-conviction relief because the allegations, taken as true, presented a material issue of fact. Specifically, Hernandez maintains: (1) his attorney's promise of a specific sentence fell below an objective standard of reasonableness because the attorney knew she could not guarantee what the court's sentence would be; and (2) he would not have pleaded guilty had his attorney not improperly advised him.

Claims of ineffective assistance of counsel are reviewed under the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Savage v. State*, 170 Idaho 367, 511 P.3d 249, 253 (2022). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient, and that the petitioner was prejudiced by the deficiency. *Id.* "There is a strong presumption that counsel's performance falls within the wide range of professional assistance." *State v. Hairston*, 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999) (quotations omitted).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Thus, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* The United States Supreme Court has stated: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* The same standard applies in reverse, as we note below.

*1.    The proper presumption in these cases.*

Before we address Hernandez's contention that his attorney's conduct fell below an objective standard of reasonableness, we must first address what Hernandez calls an "irrebuttable presumption." Hernandez claims that the language in *Hall v. State*, 156 Idaho 125, 320 P.3d 1284 (Ct. App. 2014),

4

which the State relied on in its motion for summary disposition, creates an *irrebuttable* evidentiary presumption that conflicting statements given after sworn testimony can never be rebutted. Hernandez argues that simply because his sworn statement to the district court that no one had promised him a particular sentence conflicted with his later allegation should not mean that the former statement is more trustworthy than the latter – particularly in summary disposition proceedings. While we disagree with the breadth of Hernandez's assertion on how such conflicting statements should be analyzed, we agree generally that conflicting statements do not give rise to an irrebuttable presumption; the statements given under oath during a plea hearing give rise to a rebuttable presumption.

The defendant in *Hall* pleaded guilty to a felony based on a promise made by his counsel that if he pleaded guilty, he would be placed in drug court and avoid prison. *Hall*, 156 Idaho at 127, 320 P.3d at 1286. On appeal, Hall argued that his guilty plea was tainted because his counsel improperly promised him a specific sentence; thus, the district court erred in summarily dismissing his post-conviction petition. *Id.* at 128, 320 P.3d at 1287. The Idaho Court of Appeals reasoned that a promise to receive a certain sentence by counsel did not raise the possibility of a valid claim for *Strickland* prejudice. *Hall*, 156 Idaho at 129, 1288. The Court of Appeals reached this conclusion by analyzing the answers that Hall made on his guilty plea questionnaire—affirming that no one had made any promises to him about sentencing. These answers directly contradicted the claims Hall was making on appeal. *Id.* The court reasoned that Hall could not succeed in establishing *Strickland* prejudice because the sentencing court specifically informed him that it was not required to follow the plea agreement and could impose whatever sentence it felt was appropriate. *Id.* The Court of Appeals held that even if Hall's counsel impermissibly made such a promise, the sentencing court disabused Hall of any misunderstanding before he pleaded guilty; thus, Hall could not have been prejudiced by the alleged deficiency of his attorney. *Id.*

This standard can be read to create an irrebuttable presumption that once a court has conducted a colloquy under oath of the defendant's answers to the plea agreement, the defendant is foreclosed from later challenging those statements. However, to the extent that *Hall* can be viewed to create an *irrebuttable* presumption, we wish to clarify. We acknowledge that there may be occasions, even if only very rare ones, where the statements made by a defendant while under oath or in a sworn written document can be shown to have been entered under duress or if the defendant did not enter a knowing, intelligent and voluntary plea. *See State v. Flowers*, 150 Idaho 568, 572, 249 P.3d 367, 371 (2011) (manifest injustice occurs if it cannot be shown that a guilty plea was knowing, intelligent and

5

voluntary). There also may be the rare occasion when the allegations of a petitioner in a post-conviction relief case, when viewed against the record of the plea hearing, can overcome the high bar necessary to show that such statements were incorrect when made.

Thus, the presumption from *Hall* is not irrebuttable. That said, statements made during a plea colloquy or in a plea of guilty form carry a strong presumption of verity that constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This is so because, as the United States Supreme Court recognized:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a [sentencing] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Solemn declarations in open court carry a strong presumption of verity*. The subsequent presentation of conclusory allegations *unsupported* by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73–74 (emphasis added).

In *Blackledge*, the Supreme Court determined that the critical question to be asked when evaluating these claims is "whether [the] allegations, when viewed against the record of the plea hearing, were so palpably incredible, so patently frivolous or false, as to warrant summary dismissal." *Id.* at 76 (internal quotations and citations omitted). Thus, under the rebuttable presumption standard, which we clarify today, a defendant in a post-conviction petition may rebut prior statements made under oath, but only when the statement made repudiating the prior statement is not patently frivolous or false when viewed against the record of the plea hearing. Generally, such allegations also must be supported by specific evidence, which, to survive summary dismissal, must include more than the statement of the petitioner him or herself, and must "mak[e] a prima facie case as to each essential element of the claims upon which the applicant bears the burden of proof." *DeRushe v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). *See also Lambert v. Blodgett*, 393 F.3d 943, 982 n. 27 (9th Cir. 2004) (stating that a state court's factual determinations are presumed correct, and that this presumption can be rebutted only by clear and convincing evidence).

This rebuttable presumption does not exist in isolation. Indeed, in post-conviction, as the trier of fact, trial courts can make reasonable inferences of *non-disputed facts*, particularly as those inferences relate to a colloquy by the district court during a change of plea hearing. *See State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008) (quoting *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982)) ("[W]here the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the

6

possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences.").

> 2. *Hernandez did not overcome the rebuttable presumption; thus, he has not shown that his counsel's conduct fell below an objective standard of reasonableness.*

Applying this standard to Hernandez's claim that his attorney's conduct fell below an objective standard of reasonableness in promising him a particular sentence, we hold that Hernandez's post-conviction petition failed to include specific evidence, beyond his own statements, sufficient to rebut the significant presumption of veracity from his sworn statements to the district court. Hernandez also signed two documents, the guilty plea advisory form and the written guilty plea which, without more, create a high bar which Hernandez alone cannot overcome. Indeed, without the testimony of his trial attorney corroborating the statements he now makes in post-conviction, or other evidence providing clear proof explaining why the initial statements were false, we cannot reach any conclusion other than such new statements are patently false.

Hernandez's amended petition for post-conviction alleged, "[o]riginal counsel…promised Petitioner that were he to plead guilty to the reduced charge of [s]econd [d]egree [m]urder the longest sentence he would serve would be ten to fifteen years." Hernandez provided *no* evidence to support this allegation, other than his own claim that he lied under oath to the district court. At the change of plea hearing, the district court inquired into Hernandez's understanding of the potential sentence he faced:

> THE COURT: Did you have any trouble or were there any questions asked that you did not understand?
>
> [HERNANDEZ]: No.
>
> . . .
>
> THE COURT: You have been advised apparently of what the maximum penalties are for [the felony offense of second-degree murder], but it's no less than 10 years and up to life in prison. Do you understand that?
>
> [HERNANDEZ]: Yes.
>
> THE COURT: Now, has anybody put any pressure on you or made any promises to you to get you to plead guilty today that we haven't talked about here in open court?
>
> [HERNANDEZ]: No, Your Honor.
>
> THE COURT: You're doing this of your own free will?
>
> [HERNADNEZ]: Yes.

7

The burden Hernandez has in post-conviction to rebut these statements made under oath, along with the written guilty plea and advisory plea forms he signed which corroborate these statements, is a high one. He must establish, by clear and convincing evidence, through specific facts that support his allegations, that his changed statements are probative enough to warrant an evidentiary hearing. *See Blackledge*, 431 U.S. at 76 (explaining that "the petition indicated exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication."). We conclude that Hernandez's conclusory allegations in his post-conviction petition are insufficient considering the weight which must be given to his earlier statements.

When applying this rebuttable presumption in post-conviction proceedings, we must also consider the following reality:

> More often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea. If he succeeds in vacating the judgment of conviction, retrial may be difficult. If he convinces a court that his plea was induced by an advantageous plea agreement that was violated, he may obtain the benefit of its terms. A collateral attack may also be inspired by "a mere desire to be freed temporarily from the confines of the prison."

*Blackledge*, 431 U.S. at 71–72 (quoting *Price v. Johnston*, 334 U.S. 266, 284–85 (1948)). The standard announced here not only prevents a defendant from playing fast and loose with the facts and seeking to capitalize from the benefits noted by the Court in *Blackledge*, but it also gives weight to the serious and weighty setting of a hearing at which the defendant pleads guilty. District judges play a vital role in these hearings by ensuring that the gravity of the situation is clearly expressed to the defendant. This is validated by placing the defendant under oath, reminding him that his statements made are binding and, if necessary, subject to the penalty for perjury. *See Waller v. Georgia*, 467 U.S. 39, 46 (1984); *see also State v. Colyer*, 98 Idaho 32, 36, 557 P.2d 626, 630 (1976) ("Beyond the minimum inquiry required by the United States Constitution, we encourage trial judges to engage defendants seeking to plead guilty in a dialogue as detailed as time, resources, and circumstances permit.").

Weighed against the clarified standard we announce today, Hernandez has failed to overcome the rebuttable presumption that his plea colloquy, guilty plea advisory statement, and written guilty plea were contradicted by his later bare allegations in post-conviction. Thus, he failed to raise an issue of fact sufficient to show deficient performance under *Strickland*.

*3. We decline to analyze this case under* Strickland's *prejudice prong*.

We have held that Hernandez's appeal fails under *Strickland's* first prong. As noted above, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components

8

of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, although Hernandez asserts he was prejudiced by his trial counsel's alleged promise below, we need not address those allegations on the merits, having found that his allegations, lacking additional, independent support, are insufficient to create an issue of fact.

## IV. CONCLUSION

The district court's judgment summarily dismissing Hernandez's post-conviction petition is affirmed.

Justices BRODY, STEGNER, MOELLER and ZAHN CONCUR.